# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No. 10-80840-CIV-RYSKAMP/HOPKINS

JOSEPH ADINOLFE, et al.,

      Plaintiffs,

v.

UNITED TECHNOLOGIES
CORPORATION, d/b/a
PRATT &WHITNEY,

      Defendant.

_____/

## <u>ORDER GRANTING MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>

THIS CAUSE comes before the Court pursuant to Defendant United Technologies

Corporation, d/b/a Pratt & Whitney's ("Pratt & Whitney") motion to dismiss, filed June 22, 2012

**[DE 105]**.  Plaintiffs responded on July 27, 2012 **[DE 114]**.  Pratt & Whitney replied on August

16, 2012 **[DE 119]**.  This motion is ripe for adjudication.

The Court is familiar with the allegations made in this matter and has set forth same in its

prior orders.  Accordingly, the Court will not repeat them here.  The second amended complaint

alleges four counts, including claims for strict liability, negligence and nuisance.  Pratt &

Whitney has moved to dismiss the second amended complaint.

Federal Rule of Civil Procedure 12(b)(6) requires dismissal when a plaintiff fails to state

a cause of action upon which relief may be granted.  *Ship Constr. & Funding Servs. (USA), Inc.*

*v. Star Cruises PLC*, 174 F.Supp.2d 1320, 1326 (S.D. Fla. 2001).  Although for purposes of a

motion to dismiss, a court must construe the complaint in the light most favorable to the plaintiff

and generally must accept the facts alleged by the plaintiff as true, the court need not accept as

true legal conclusions couched as factual allegations.  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949-50 (2009); *Bell Atlantic Corp. v. Twombley,* 550 U.S. 544, 555 (2007).  Simple "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to insulate a claim against dismissal.  *Iqbal*, 129 S.Ct. at 1949.  The Eleventh Circuit discussed the requirements of *Twombley* and *Iqbal* in *Jacobs v. Tempur-Pedic Intern., Inc.*, 626 F.3d 1327, 1340 (11th Cir. 2010), an antitrust case involving alleged price fixing of visco-elastic foam mattresses.  The Eleventh Circuit affirmed the dismissal of the action, ruling that an allegation that price fixing agreements "have unreasonably restrained, do unreasonably restrain, and will continue to unreasonably restrain trade and commerce in the visco-elastic mattress market...by eliminating price competition" offered no means by which a court could assess how the alleged harm to competition occurred.  *See id.* at 1340.  Plaintiffs' allegations of the relevant submarket failed for lack of specificity: the conclusory allegation that "[v]isco-elastic foam mattresses comprise a relevant product market, or sub-market, separate and distinct from the market for mattresses generally," did not provide any information about consumer preferences, i.e., whether consumers viewed visco-elastic mattresses as luxury goods or whether consumers saw visco-elastic mattresses as interchangeable from ordinary mattresses.  *See id*. at 1338.  The spartan allegations prevented the Court from evaluating the merits of Plaintiffs' claims.

As the Supreme Court stated in *Iqbal*, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions . . . only a complaint that states a plausible claim for relief survives a motion to dismiss." 129 S.Ct. at 1950.  A complaint must include "more than an unadorned, the-defendant- unlawfully-harmed-me accusation." *Id.* at 1949. The plausibility inquiry is a "context-specific task that requires the reviewing court to draw on its

3

judicial experience and common sense." *Jacobs*, 626 F.3d at 1333 (quoting *Iqbal*, 129 S.Ct. at 1950).

Plaintiffs and class representatives Joseph Adinolfe, Edwin Reyes, and Kay Samson bring this action as a class action pursuant to Fed.R.Civ.P. 23, on behalf of themselves and the following class and subclasses of persons similarly situated:

> The Class: All persons who, on February 1, 2010, owned residential property within the neighborhood of Palm Beach County, Florida, known as The Acreage, as defined on the attached map.
>
> Contamination Subclass: All members of the Class whose properties or groundwater have been contaminated by CCOCs that P&W dumped, buried, or spilled.
>
> Proximity Subclass: All members of the Class whose properties or groundwater have not been contaminated by CCOCs that P&W dumped, buried, or spilled but who have been harmed by the proximity of their properties to the properties comprising the Contamination Subclass.
>
> Anticipated Contamination Subclass: All members of the Class whose properties or groundwater have not yet been contaminated by CCOCs but that will, based upon a reasonable degree of hydrologic and geologic probability or certainty, be contaminated in the reasonably foreseeable future by CCOCs that P&W dumped, buried, or spilled.

(Sec. Am. Compl. ¶ 251.)

The amended complaint did not name any specific contaminant(s).  Absent any identification of any contaminant whatsoever, the Court lacked any means of ascertaining whether Defendant is connected with the alleged contamination.  As the Court noted, the alleged contamination could be a normal byproduct of water chlorination or could have come from fill used to raise Acreage properties.

In the Second Amended Complaint, Plaintiffs have identified trihalomethanes ("THMs") as the alleged contaminant (specifically three trihalomethanes: chloroform,

4

bromodichloromethane, and methylene chloride), but have not alleged specific contamination of *each Plaintiff's* property. Instead, Plaintiffs include generic conclusory allegations about alleged contamination in the groundwater underlying "The Acreage Neighborhood and the Plaintiffs' and class members' properties." (Sec. Am. Comp. ¶238).

Notably, Plaintiffs do not allege that any of the 384 Plaintiffs have tested and found actual contamination on their properties. Instead, Plaintiffs allege that they have drilled an unspecified number of test wells somewhere "in The Acreage," and that tests have revealed THMs in the groundwater under The Acreage Neighborhood. *Id.*

In the introductory paragraphs to the Complaint, Plaintiffs explicitly acknowledge that dozens of Plaintiffs have no contamination. With respect to many of the named plaintiffs, Plaintiffs include a conclusory allegation that their property was contaminated, but with respect to several dozen plaintiffs, Plaintiffs allege that the property "is not yet known to be contaminated but is believed will become contaminated . . . ." (Sec. Am. Comp. ¶¶ 5, 13, 16, 18, 22, 37, 38, 49, 54, 59, 61, 65, 67, 68, 69, 70, 71, 76, 85, 100, 104, 108, 111, 118, 135, 136, 140, 141, 142, 146, 149, 152, 154, 156, 164, 181, 189, 190, 199, 202, 207, 213, 218, 222, 225). Each of these Plaintiffs has expressed concern about future contamination, but in doing so each has expressly admitted that each has *no current contamination*, which means each has acknowledged that each has no present cause of action.

Further, Plaintiffs have failed to allege that any THM contamination exceeds the regulatory safe drinking water standard. At the hearing on the Motion to Dismiss the Amended Complaint, the Court told Plaintiffs directly, twice, that "an additional requirement of pleading would be that whatever these carcinogenic substances are, they exceed the maximum allowed for

5

safety."  Transcript of March 20, 2012 Hearing, at p.13/18-20; p.16/20-21 ("The third thing you

have to do is allege that these contaminants exceed the safety level.") Plaintiffs have not done so.

 In dismissing the Amended Complaint, the Court was explicit that under Florida law,

only plaintiffs with actual contamination could maintain a claim.  Plaintiffs acknowledge that

"the Court ruled that only the owners of properties on which contaminated groundwater can be

found can state a cause of action under Florida law."  (Sec. Am. Compl., ¶254.)  Plaintiffs then

state, "Plaintiffs respectfully disagree" and state that "in an effort to abide by that ruling" they

propose two subclasses that of property owners *without contamination. Id.*  Adding subclasses of

owners without contamination is not "an effort to abide by" a ruling that owners without

contamination have no claim.  Nevertheless, Plaintiffs include a "Proximity Subclass" of putative

class members whose properties "have not been contaminated . . . but who have been harmed by

proximity" to alleged contamination, and an "Anticipated Contamination Subclass" defined as

putative class members  whose properties are not contaminated but that Plaintiffs predict will be

contaminated.  *Id.* ¶251.  These claims are contrary to Florida law and are dismissed with

prejudice.

 The second amended complaint also fails with regard to the allegations of causation.

Plaintiffs include the same conclusory allegations of contamination in their recitation of the

elements of their claims (*see* Sec. Am. Compl. ¶¶ 266, 273, 280, 284, 286, 289), but do not allege

that any specific contaminant has migrated onto each Plaintiff's individual property, and do not

allege that each Plaintiff has contamination, much less contamination from Pratt & Whitney.

Plaintiffs expressly allege that several dozen Plaintiffs have *no* contamination, make general

allegations about contamination under "The Acreage Neighborhood" as opposed to specifics

about each plaintiff's property, and allege no details of their alleged test results.

The closest Plaintiffs come to making a specific allegation that something traveled from Pratt & Whitney to the Acreage is in Paragraphs 236 and 238, but those fall short of the mark. Plaintiffs allege that Pratt & Whitney and The Acreage "are underlain by" the same aquifer, and that "groundwater is drawn" from the Corbett Wildlife Management Area and Pratt & Whitney to the Acreage.  Complaint, ¶236.  Plaintiffs then allege that their experts:

> confirm that the types of CCOCs . . . known to have been spilled . . . at the P&W site and by Pratt & Whitney in the Corbett National Wildlife Refuge [sic] have traveled to and physically invaded The Acreage, and are present in the groundwater of The Acreage Neighborhood and have contaminated the groundwater that the Plaintiffs' and class members' properties share with [THMs].

Sec. Am. Compl., ¶238.  This allegation superficially appears specific, but is yet another generalized allegation that the "types of CCOCs" found at Pratt & Whitney traveled to somewhere under "The Acreage"—as opposed to under each Plaintiff's property—and that these types of CCOCs "are present" in "the groundwater of The Acreage Neighborhood." The mere allegation that chemicals at Pratt & Whitney "are present" in the groundwater of "the Acreage" does not mean that the chemical traveled from Pratt & Whitney to the Acreage, as any chemical in the Acreage could have come from a different source than Pratt & Whitney.

Moreover, Plaintiffs allege different and contradictory theories of how anything was supposed to have travelled from Pratt & Whitney to The Acreage. In several allegations, Plaintiffs point to groundwater movement, but they include other conclusory "catch all" allegations, such as:  "Groundwater movement, surface water movement, seepage, percolation pond flooding, canal flooding, and wind have caused these CCOCs to escape or migrate from

7

P&W's property and into and under The Acreage." *Id.* ¶235. This generic and conclusory allegation is not only insufficient to state a claim, but by including pond flooding and "wind" as possible routes, it contradicts the groundwater allegations.

Finally, the Court was clear that Plaintiffs could not seek damages for alleged stigma damages without showing actual contamination.  Despite this clear language, Plaintiffs include the same allegations about media stories and alleged "concerns" in the public about contamination.  Sec. Am. Compl. ¶¶ 241 (citing TV news story); 242 (citing media report); 243 (citing news stories); 244 (news stories); 245 (citing letter from realtors' association); 246 ("widespread coverage from print and television media").   These claims have already been dismissed with prejudice.  Accordingly, the Court will not address these claims further here.  It is hereby

ORDERED AND ADJUDGED that the motion to dismiss, filed June 22, 2012 **[DE 105]**, is GRANTED.  Whereas Plaintiffs have now thrice failed to state a claim, the dismissal is with prejudice.  The Clerk of Court shall CLOSE this case and DENY any pending motions as MOOT.

DONE AND ORDERED at Chambers in West Palm Beach, Florida, this 13th day of November, 2012.

S/Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE