**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

Case No. 10-80840-CIV-Ryskamp/Hopkins

**CLASS REPRESENTATION**

JOSEPH ADINOLFE, et al., Individually,
and on behalf of all others similarly situated,

Plaintiffs,

v.

UNITED TECHNOLOGIES CORP.,
d/b/a PRATT & WHITNEY,

Defendant.

_____/

**PRATT & WHITNEY'S RESPONSES TO PLAINTIFFS' THIRD REQUEST FOR PRODUCTION**

Defendant United Technologies Corporation, d/b/a Pratt & Whitney ("Pratt & Whitney" or "Defendant"), by and through undersigned counsel, hereby submits the following Responses to Plaintiffs' Third Request for Production.

**OBJECTIONS TO PLAINTIFFS' INSTRUCTIONS**

Pratt & Whitney objects to Plaintiffs' instructions to the extent they purport to impose obligations different than and/or in excess of those imposed by the Federal Rules of Civil Procedure.

**RESPONSES TO DOCUMENTS REQUESTED**

1.     All **Plot Plans and scaled drawings,** including but not limited to those showing test stands, cooling towers, manmade surface water features, temporary and permanent structures, prepared for or concerning the P&W facility in Palm Beach County, Florida.

1

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the design of "test stands, cooling towers, manmade surface water features, [or] temporary and permanent structures." Accordingly, this request is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for *all* "plot plans and scaled drawings" for test stands, cooling towers, manmade surface water features, temporary and permanent structures" imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinary large amount of documentation that is at best tangentially related to any matter at issue in the case.

Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in Electronically Stored Information ("ESI"), which also entails substantial time and expense. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence. As a notable example, it would be extremely difficult to search for plot plans and drawings for all "temporary structures," especially without any limitation as to the time frame of the request. But that documentation has no relevance to

2

Plaintiffs' claims or Pratt & Whitney's defenses.

The burden of responding to this discovery is illustrated, in part, with the attached declaration of David Walter, which was originally prepared and served in 2012 in response to discovery motion practice in the case of *Featherston v. United Technologies* (Case No. 2011CA013759XXXXMB, Palm Beach County), a state court action that also alleges contamination in the Acreage ("Featherston case"). Mr. Walter explains, as Manager of Test Systems Engineering, the extraordinary burden that would be associated with searching for and producing documents in response to a request for documents related to the "construction, planning, repair and/or remediation" of test stands in just one area (Area E) of the Pratt & Whitney facility. As explained by Mr. Walter, test stands have been used at Pratt & Whitney since the 1950s and 1960s, they are regularly modified, rebuilt, added on to and the like, and there might be 10 jobs per year in a test area, some of which would involve "hundreds of drawings, hundreds of purchase orders, and thousands of supporting documents to contractors." Mr. Walter also explains that just searching for "drawings" "would require looking through over 90,000 drawings on file."

This document request is more expansive than the request that Mr. Walter was addressing in his declaration. Searching for documents that are responsive to this request (documents that have no relevance to Plaintiffs' claims of environmental contamination) would impose an even greater and more unwarranted burden.

The burden is also unwarranted given the substantial discovery that Plaintiffs have already obtained. Pratt & Whitney has produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of

3

environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32). To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for irrelevant "plot plan and scaled drawings" imposes an undue burden.

Pratt & Whitney further objects that the documents covered by this request could include documents that contain or reveal confidential information of Pratt & Whitney materials subject to the requirements of the International Traffic in Arms Regulations (ITAR) and the Export Administration Regulations (EAR).  22 C.F.R. §§ 120-130; 15 C.F.R. §§ 730-774.

2.      All **Process Flow Diagrams** of jet engine testing, rocket engine testing, component testing, metal plating, mirror plating, and water reuse or reclamation systems prepared for or concerning the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the "process flow" for jet engine testing, rocket engine testing, component testing, metal plating, mirror plating, water reuse or water reclamation systems. Accordingly, this request is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for *all* "process flow diagrams" for such things as "jet engine testing" imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinarily large amount of documentation that is at best tangentially related to any matter at issue in the case.

Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence. As a notable example, it would be extremely difficult to search for all process flow diagrams for "jet engine testing" over the course of the many decades that that activity has been a central component of the work performed at the Pratt & Whitney facility. But that

5

documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses.

The burden of responding to this discovery is illustrated, in part, with the attached declaration of David Walter, which was originally prepared and served in 2012 in response to discovery motion practice in the Featherston case. Mr. Walter explains, as Manager of Test Systems Engineering, the extraordinary burden that would be associated with searching for and producing documents in response to a request for documents related to the "construction, planning, repair and/or remediation" of test stands in just one area (Area E) of the Pratt & Whitney facility. As explained by Mr. Walter, test stands have been used at Pratt & Whitney since the 1950s and 1960s, they are regularly modified, rebuilt, added on to and the like, and there might be 10 jobs per year in a test area, some of which would involve "hundreds of drawings, hundreds of purchase orders, and thousands of supporting documents to contractors." Mr. Walter also explains that just searching for "drawings" "would require looking through over 90,000 drawings on file."

This document request is more intrusive than the request that Mr. Walter was addressing in his declaration. Searching for documents that are responsive to this request (documents that have no relevance to Plaintiffs' claims of environmental contamination) would impose an even greater and more unwarranted burden.

The burden is also unwarranted given the substantial discovery that Plaintiffs have already obtained. Pratt & Whitney has produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports,

records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32). To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for irrelevant "process flow" diagrams and documents imposes an undue burden.

Pratt & Whitney further objects that the documents covered by this request could include documents that contain or reveal confidential information of Pratt & Whitney or materials subject to the requirements of ITAR and EAR.

3.    All **Process Descriptions** of jet engine testing, rocket engine testing, component testing, metal plating, mirror plating, and water reuse or reclamation systems prepared for or concerning the P&W facility in Palm Beach County, Florida, including but not limited to those explaining Process Flow Diagrams.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant

information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the process for jet engine testing, rocket engine testing, component testing, metal plating, mirror plating, water reuse or water reclamation systems. Accordingly, this request is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for *all* "process descriptions" for such things as "jet engine testing" imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinarily large amount of documentation that is at best tangentially related to any matter at issue in the case.

Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence. As a notable example, it would be extremely difficult to search for all process descriptions for "jet engine testing" over the course of the many decades that that activity has been a central component of the work performed at the Pratt & Whitney facility. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses.

The request is also overly broad and unduly burdensome in its request for all "descriptions" of "jet engine testing," "rocket engine testing" and other matters, without regard to the nature of the description or whether it has anything to do with environmental

8

issues or claims of environmental contamination. A substantial portion of the work done at the Pratt & Whitney facility for the past 50 years has involved jet engine testing and the other listed activities, which would necessarily involve "descriptions" of various sorts. None of those materials is relevant to Plaintiffs' claims of environmental contamination.

The burden of responding to this discovery is illustrated, in part, with the attached declaration of David Walter, which was originally prepared and served in 2012 in response to discovery motion practice in the Featherston case. Mr. Walter explains, as Manager of Test Systems Engineering, the extraordinary burden that would be associated with searching for and producing documents in response to a request for documents related to the "construction, planning, repair and/or remediation" of test stands in just one area (Area E) of the Pratt & Whitney facility. As explained by Mr. Walter, test stands have been used at Pratt & Whitney since the 1950s and 1960s, they are regularly modified, rebuilt, added on to and the like, and there might be 10 jobs per year in a test area, some of which would involve "hundreds of drawings, hundreds of purchase orders, and thousands of supporting documents to contractors." Mr. Walter also explains that just searching for "drawings" "would require looking through over 90,000 drawings on file."

This document request is more expansive and intrusive than the request that Mr. Walter was addressing in his declaration. Searching for documents that are responsive to this request (documents that have no relevance to Plaintiffs' claims of environmental contamination) would impose an even greater and more unwarranted burden.

The burden is also unwarranted given the substantial discovery that Plaintiffs have already obtained. Pratt & Whitney has produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production

includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32). To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for irrelevant "process descriptions" for various activities imposes an undue burden.

Pratt & Whitney further objects that the documents covered by this request could include documents that contain or reveal confidential information of Pratt & Whitney or materials subject to the requirements of ITAR and EAR.

4.  All **plans, proposals, design drawings, diagrams, descriptions,** and **specifications** prepared for or concerning **surface water bodies** including but not limited to **canals, the circulating canal, the main canal, the borrow pits, ponds, and percolation ponds** at the P&W facility in Palm Beach County, Florida.

10

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the "design" of surface water bodies. Accordingly, this request is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for *all* "plans" and the like for surface water bodies imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinary large amount of documentation that is at best tangentially related to any matter at issue in the case. Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

The burden of responding to this discovery is illustrated, in part, with the attached declaration of David Walter, which was originally prepared and served in 2012 in response to discovery motion practice in the Featherston case. Mr. Walter explains, as Manager of Test Systems Engineering, the extraordinary burden that would be associated with searching for

11

and producing documents in response to a request for documents related to the "construction, planning, repair and/or remediation" of test stands in just one area (Area E) of the Pratt & Whitney facility. As explained by Mr. Walter, test stands have been used at Pratt & Whitney since the 1950s and 1960s, they are regularly modified, rebuilt, added on to and the like, and there might be 10 jobs per year in a test area, some of which would involve "hundreds of drawings, hundreds of purchase orders, and thousands of supporting documents to contractors." Mr. Walter also explains that just searching for "drawings" "would require looking through over 90,000 drawings on file."

This document request is more intrusive than the request that Mr. Walter was addressing in his declaration. Searching for documents that are responsive to this request (documents that have no relevance to Plaintiffs' claims of environmental contamination) would impose an even greater and more unwarranted burden.

The burden is also unwarranted given the substantial discovery that Plaintiffs have already obtained. Pratt & Whitney has produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water

quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32). To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Pratt & Whitney has searched for and produced reports of environmental investigations and remediation efforts that include diagrams and descriptions of surface water bodies at the facility. Pratt & Whitney's comprehensive search for documents responsive to Plaintiffs' prior requests would also encompass descriptions of surface water bodies, to the extent they were implicated in remediation efforts or concerns about environmental contamination. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "plans" and "descriptions" of surface water bodies imposes an undue burden.

Pratt & Whitney further objects that the documents covered by this request could include documents that contain or reveal confidential information of Pratt & Whitney or materials subject to the requirements of ITAR and EAR.

5.     All **plans, proposals, design drawings, diagrams, descriptions,** and **specifications** prepared for or concerning **Cooling Towers** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding

13

to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the process for jet engine testing or the design of the "cooling towers" used in connection with that testing. Accordingly, this request is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for *all* "plans, proposals, design drawings, diagrams, descriptions and specifications" for the cooling towers imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinarily large amount of documentation that is at best tangentially related to any matter at issue in the case. Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

The burden of responding to this discovery is illustrated, in part, with the attached declaration of David Walter, which was originally prepared and served in 2012 in response to discovery motion practice in the Featherston case. Mr. Walter explains, as Manager of Test Systems Engineering, the extraordinary burden that would be associated with searching for and producing documents in response to a request for documents related to the "construction, planning, repair and/or remediation" of test stands in just one area (Area E) of the Pratt & Whitney facility. As explained by Mr. Walter, test stands have been used at Pratt & Whitney since the 1950s and 1960s, they are regularly modified, rebuilt, added on to and the like, and

there might be 10 jobs per year in a test area, some of which would involve "hundreds of drawings, hundreds of purchase orders, and thousands of supporting documents to contractors." Mr. Walter also explains that just searching for "drawings" "would require looking through over 90,000 drawings on file."

This document request is more intrusive than the request that Mr. Walter was addressing in his declaration. Searching for documents that are responsive to this request (documents that have no relevance to Plaintiffs' claims of environmental contamination) would impose an even greater and more unwarranted burden.

The burden is also unwarranted given the substantial discovery that Plaintiffs have already obtained. Pratt & Whitney has produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32). To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have

15

previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "plans, proposals, design drawings, diagrams, descriptions, and specifications" of the cooling towers imposes an undue burden.

Pratt & Whitney further objects that the documents covered by this request could include documents that contain or reveal confidential information of Pratt & Whitney or materials subject to the requirements of ITAR and EAR.

6.   All **plans, proposals, design drawings, diagrams, descriptions,** and **specifications** prepared for or concerning **Test Stands** including but not limited to **jet and rocket engine test stands** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the process for jet engine testing or rocket engine testing. Accordingly, this broad request for all manner of documentation concerning the "test stands" is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for *all* "plans, proposal, design drawings, diagrams, descriptions and specifications" for the test stands used in connection with engine testing imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an

16

extraordinarily large amount of documentation that is at best tangentially related to any matter at issue in the case. Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence. As a notable example, it would be extremely difficult to search for all "descriptions" of the test stands used in engine testing over the course of the many decades that that activity has been a central component of the work performed at the Pratt & Whitney facility. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses.

The request is also overly broad and unduly burdensome in its request for all "descriptions" of "test stands," without regard to the nature of the description or whether it has anything to do with environmental issues or claims of environmental contamination. A substantial portion of the work done at the Pratt & Whitney facility for the past 50 years has involved the use of "test stands," which would necessarily involve "descriptions" of various sorts. None of those materials is relevant to Plaintiffs' claims of environmental contamination.

The burden of responding to this discovery is illustrated, in part, with the attached declaration of David Walter, which was originally prepared and served in 2012 in response to discovery motion practice in the Featherston case. Mr. Walter explains, as Manager of Test Systems Engineering, the extraordinary burden that would be associated with searching for

17

and producing documents in response to a request for documents related to the "construction, planning, repair and/or remediation" of test stands in just one area (Area E) of the Pratt & Whitney facility. As explained by Mr. Walter, test stands have been used at Pratt & Whitney since the 1950s and 1960s, they are regularly modified, rebuilt, added on to and the like, and there might be 10 jobs per year in a test area, some of which would involve "hundreds of drawings, hundreds of purchase orders, and thousands of supporting documents to contractors." Mr. Walter also explains that just searching for "drawings" "would require looking through over 90,000 drawings on file."

This document request is more expansive than the request that Mr. Walter was addressing in his declaration (in that it requests information about *all* test stands). Searching for documents that are responsive to this request (documents that have no relevance to Plaintiffs' claims of environmental contamination) would impose an even greater and more unwarranted burden.

The burden is also unwarranted given the substantial discovery that Plaintiffs have already obtained. Pratt & Whitney has produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination"

18

(Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32). To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "plans, proposals, design drawings, diagrams, descriptions, and specifications" of the test stands imposes an undue burden.

Pratt & Whitney further objects that the documents covered by this request could include documents that contain or reveal confidential information of Pratt & Whitney or materials subject to the requirements of ITAR and EAR.

7.  All **plans, proposals, design drawings, diagrams, descriptions,** and **specifications** prepared for or concerning each **Burn Pit** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney states that it has not maintained or used a "burn pit" at its facility in decades. To the extent they ever existed and were maintained, any documents concerning the design or operation of any burn pit would have been maintained in the archive of documents that was previously produced to Plaintiffs. Similarly, any documents relating to an "inventory" of burn pits would have been found in that archive, to the extent they ever existed and were maintained. With the exception of descriptions that might be contained in environmental reports previously produced to Plaintiffs, Pratt & Whitney is not aware of any

19

documents responsive to this request.

8.   All **Burn Pit Disposal Inventories** prepared for or concerning the P&W facility in Palm Beach County, Florida, including the location and coordinates for each burn pit, records of materials and chemicals disposed of including phase (solid, liquid, gas), quantity, volume, weight, density, disposal method, and whether ash or liquid was left in place or removed from the burn pit.

**RESPONSE:**

Pratt & Whitney states that it has not maintained or used a "burn pit" at its facility in decades. To the extent they ever existed and were maintained, any documents concerning the design or operation of any burn pit would have been maintained in the archive of documents that was previously produced to Plaintiffs. Similarly, any documents relating to an "inventory" of burn pits would have been found in that archive, to the extent they ever existed and were maintained. Pratt & Whitney is not aware of any documents responsive to this request.

9.   All **plans, proposals, design drawings, diagrams, descriptions,** and **specifications** prepared for or concerning **Degreasing Operations associated with jet or rocket engine test firing** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the details of the process for "degreasing operations." Accordingly, this broad request for all manner of documentation concerning "degreasing operations" is not reasonably calculated to lead to the

20

discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for *all* "plans, proposal, design drawings, diagrams, descriptions and specifications" for degreasing operations imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinarily large amount of documentation that is at best tangentially related to any matter at issue in the case. Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence. As a notable example, it would be extremely difficult to search for all "descriptions" of degreasing operations over the course of many decades. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses.

The burden of responding to this discovery is illustrated, in part, with the attached declaration of David Walter, which was originally prepared and served in 2012 in response to discovery motion practice in the Featherston case. Mr. Walter explains, as Manager of Test Systems Engineering, the extraordinary burden that would be associated with searching for and producing documents in response to a request for documents related to the "construction, planning, repair and/or remediation" of test stands in just one area (Area E) of the Pratt & Whitney facility. As explained by Mr. Walter, test stands have been used at Pratt & Whitney since the 1950s and 1960s, they are regularly modified, rebuilt, added on to and the like, and there might be 10 jobs per year in a test area, some of which would involve "hundreds of

drawings, hundreds of purchase orders, and thousands of supporting documents to contractors." Mr. Walter also explains that just searching for "drawings" "would require looking through over 90,000 drawings on file."

This document request is more intrusive than the request that Mr. Walter was addressing in his declaration. Searching for documents that are responsive to this request (documents that have no relevance to Plaintiffs' claims of environmental contamination) would impose an even greater and more unwarranted burden.

The request is also overly broad and unduly burdensome in its request for all "descriptions" of "degreasing operations" without regard to the nature of the operation (whether it involved a contaminant of concern, for example), the nature of the description (whether it concerns a relevant aspect of the operation) or whether it has anything to do with environmental issues or claims of environmental contamination.

The burden is also unwarranted given the substantial discovery that Plaintiffs have already obtained. Pratt & Whitney has produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water

22

quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32). To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "plans, proposals, design drawings, diagrams, descriptions, and specifications" of degreasing operations imposes an undue burden.

Pratt & Whitney further objects that the documents covered by this request could include documents that contain or reveal confidential information of Pratt & Whitney or materials subject to the requirements of ITAR and EAR.

10. All **Inventories** and records of **Degreasing Operations associated with jet or rocket engine test firing** prepared for or concerning the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the details of the process for "degreasing operations." Accordingly, this broad request for "all records" of "degreasing operations" is not reasonably calculated to lead to the discovery of evidence that

is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for "all records" of degreasing operations imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinarily large amount of documentation that is at best tangentially related to any matter at issue in the case. Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. It would be extremely difficult to search for "all records" of degreasing operations over the course of the many decades during which Pratt & Whitney has conducted jet engine testing. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

The request is also overly broad and unduly burdensome in its request for all "records" of "degreasing operations" without regard to the nature of the operation (whether it involved a contaminant of concern, for example), the nature of the record (whether it concerns a relevant aspect of the operation) or whether it has anything to do with environmental issues or claims of environmental contamination.

The burden of responding to this discovery is illustrated, in part, with the attached declaration of David Walter, which was originally prepared and served in 2012 in response to discovery motion practice in the Featherston case. Mr. Walter explains, as Manager of Test Systems Engineering, the extraordinary burden that would be associated with searching for and producing documents in response to a request for documents related to the "construction,

planning, repair and/or remediation" of test stands in just one area (Area E) of the Pratt & Whitney facility. As explained by Mr. Walter, test stands have been used at Pratt & Whitney since the 1950s and 1960s, they are regularly modified, rebuilt, added on to and the like, and there might be 10 jobs per year in a test area, some of which would involve "hundreds of drawings, hundreds of purchase orders, and thousands of supporting documents to contractors." Mr. Walter also explains that just searching for "drawings" "would require looking through over 90,000 drawings on file."

This document request is more intrusive than the request that Mr. Walter was addressing in his declaration. Searching for documents that are responsive to this request (documents that have no relevance to Plaintiffs' claims of environmental contamination) would impose an even greater and more unwarranted burden.

The burden is also unwarranted given the substantial discovery that Plaintiffs have already obtained. Pratt & Whitney has produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination."

(Plaintiffs' First Request for Production, Request No. 32). To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "all inventories and records" of degreasing operations imposes an undue burden.

Pratt & Whitney further objects that the documents covered by this request could include documents that contain or reveal confidential information of Pratt & Whitney or materials subject to the requirements of ITAR and EAR.

11.  All **plans, proposals, design drawings, diagrams, descriptions,** and **specifications** prepared for or concerning **Solvent Stills** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney states that it has not maintained or used a "solvent still" at the facility in decades. With the exception of descriptions that might be contained in environmental reports previously produced to Plaintiffs, Pratt & Whitney is not aware of any documents responsive to this request.

12.  All **Inventories** and records of **Solvent Stills** prepared for or concerning the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney states that it has not maintained or used a "solvent still" at the facility in decades. With the exception of "records" of the solvent still that might be contained in environmental reports previously produced to Plaintiffs, Pratt & Whitney is not

aware of any documents responsive to this request.

13.    All **plans, proposals, design drawings, diagrams, descriptions,** and **specifications** prepared for or concerning **Underground and Aboveground Storage Tanks** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the details of the design of "underground and aboveground storage tanks." Accordingly, this broad request for all manner of documentation concerning the storage tanks is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for *all* "plans, proposal, design drawings, diagrams, descriptions and specifications" for storage tanks imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinarily large amount of documentation that is at best tangentially related to any matter at issue in the case. Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. It would be extremely difficult to search for all "descriptions" of storage tanks over the course of many decades. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses.

27

In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

The request is also overly broad and unduly burdensome in its request for all "descriptions" of "storage tanks" without regard to the nature of the storage tank (whether it is of significant size or involved a contaminant of concern, for example), the nature of the description (whether it concerns a relevant aspect of the operation of a storage tank or not) or whether it has anything to do with environmental issues or claims of environmental contamination. Pratt & Whitney maintains several hundred "storage tanks" (under the broadest definition) with a capacity of 25 gallons or higher; documentation concerning these "storage tanks" is not relevant to Plaintiffs' claims and the burden of collecting documents in response to Plaintiffs' broad request would be extraordinary.

The burden of responding to this discovery is illustrated, in part, with the attached declaration of David Walter, which was originally prepared and served in 2012 in response to discovery motion practice in the Featherston case. Mr. Walter explains, as Manager of Test Systems Engineering, the extraordinary burden that would be associated with searching for and producing documents in response to a request for documents related to the "construction, planning, repair and/or remediation" of test stands in just one area (Area E) of the Pratt & Whitney facility. As explained by Mr. Walter, test stands have been used at Pratt & Whitney since the 1950s and 1960s, they are regularly modified, rebuilt, added on to and the like, and there might be 10 jobs per year in a test area, some of which would involve "hundreds of drawings, hundreds of purchase orders, and thousands of supporting documents to contractors." Mr. Walter also explains that just searching for "drawings" "would require

28

looking through over 90,000 drawings on file."

This document request is more expansive and intrusive than the request that Mr. Walter was addressing in his declaration. Searching for documents that are responsive to this request (documents that have no relevance to Plaintiffs' claims of environmental contamination) would impose an even greater and more unwarranted burden.

Pratt & Whitney has produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32). To the extent there are environmental issues, including any basis on which to claim environmental contamination due to the operation of storage tanks at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "all plans, proposals, design drawings, diagrams, descriptions, and specifications" of storage

tanks imposes an undue burden.

14.     All **Inventories** and records of **Underground and Aboveground Storage Tanks**
        prepared for or concerning the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the details of the design of "underground and aboveground storage tanks." Accordingly, this broad request for "all records" of the storage tanks is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for *all* records for storage tanks imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinarily large amount of documentation that is at best tangentially related to any matter at issue in the case. Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. It would be extremely difficult to search for all "records" of storage tanks over the course of many decades. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light of the time and expense required to respond to this expansive request, the burden of this

discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

The request is also overly broad and unduly burdensome in its request for all "inventories and records" of "storage tanks" without regard to the nature of the storage tank (whether it is of significant size or involved a contaminant of concern, for example), the nature of the document (whether it concerns a relevant aspect of the operation of a storage tank or not) or whether it has anything to do with environmental issues or claims of environmental contamination. Pratt & Whitney maintains several hundred "storage tanks" (under the broadest definition) with a capacity of 25 gallons or higher; documentation concerning these "storage tanks" is not relevant to Plaintiffs' claims and the burden of collecting documents in response to Plaintiffs' broad request would be extraordinary.

The burden of responding to this discovery is illustrated, in part, with the attached declaration of David Walter, which was originally prepared and served in 2012 in response to discovery motion practice in the Featherston case. Mr. Walter explains, as Manager of Test Systems Engineering, the extraordinary burden that would be associated with searching for and producing documents in response to a request for documents related to the "construction, planning, repair and/or remediation" of test stands in just one area (Area E) of the Pratt & Whitney facility. As explained by Mr. Walter, test stands have been used at Pratt & Whitney since the 1950s and 1960s, they are regularly modified, rebuilt, added on to and the like, and there might be 10 jobs per year in a test area, some of which would involve "hundreds of drawings, hundreds of purchase orders, and thousands of supporting documents to contractors." Mr. Walter also explains that just searching for "drawings" "would require looking through over 90,000 drawings on file."

This document request is more expansive and intrusive than the request that Mr.

Walter was addressing in his declaration. Searching for documents that are responsive to this request (documents that have no relevance to Plaintiffs' claims of environmental contamination) would impose an even greater and more unwarranted burden.

Pratt & Whitney has produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32). To the extent there are environmental issues, including any basis on which to claim environmental contamination due to the operation of storage tanks at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for all "inventories" and "records" of storage tanks imposes an undue burden.

15.     All **plans, proposals, design drawings, diagrams, descriptions,** and **specifications** prepared for or concerning **Underground and Aboveground Piping** (excluding indoor plumbing) at the P&W facility in Palm Beach County,

32

Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the details of the design of "underground and aboveground piping." Accordingly, this broad request for all manner of documentation concerning piping is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for *all* "plans, proposal, design drawings, diagrams, descriptions and specifications" for piping imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinarily large amount of documentation that is at best tangentially related to any matter at issue in the case. Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. It would be extremely difficult to search for all "descriptions" of piping over the course of many decades. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

The request is also overly broad and unduly burdensome in its request for all "descriptions" of "piping," without regard to the nature of the piping at issue (for water, natural gas, nitrogen or other materials), the nature of the description at issue, or whether it has anything to do with environmental issues or claims of environmental contamination. As an industrial facility that has been in use for many years, the Pratt & Whitney facility has had "piping" of various sorts, the use of which would necessarily involve "descriptions" of various sorts. None of those materials is relevant to Plaintiffs' claims of environmental contamination.

The burden of responding to this discovery is illustrated, in part, with the attached declaration of David Walter, which was originally prepared and served in 2012 in response to discovery motion practice in the Featherston case. Mr. Walter explains, as Manager of Test Systems Engineering, the extraordinary burden that would be associated with searching for and producing documents in response to a request for documents related to the "construction, planning, repair and/or remediation" of test stands in just one area (Area E) of the Pratt & Whitney facility. As explained by Mr. Walter, test stands have been used at Pratt & Whitney since the 1950s and 1960s, they are regularly modified, rebuilt, added on to and the like, and there might be 10 jobs per year in a test area, some of which would involve "hundreds of drawings, hundreds of purchase orders, and thousands of supporting documents to contractors." Mr. Walter also explains that just searching for "drawings" "would require looking through over 90,000 drawings on file."

This document request is more expansive and intrusive than the request that Mr. Walter was addressing in his declaration. Searching for documents that are responsive to this request (documents that have no relevance to Plaintiffs' claims of environmental

contamination) would impose an even greater and more unwarranted burden.

Pratt & Whitney has produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32). To the extent there are environmental issues, including any basis on which to claim environmental contamination due to the operation of "piping" at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for all "plans, proposals, design drawings, diagrams, descriptions, and specifications" of "piping" imposes an undue burden.

16.     All **Inventories** and records of **Underground and Aboveground Piping** (excluding indoor plumbing) prepared for or concerning the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the details of the design of "underground and aboveground piping." Accordingly, this broad request for "all records" concerning piping is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for *all* records for piping imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinarily large amount of documentation that is at best tangentially related to any matter at issue in the case. Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. It would be extremely difficult to search for all "records" of piping over the course of many decades. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

The request is also overly broad and unduly burdensome in its request for all records of "piping," without regard to the nature of the piping at issue (for water, natural gas, nitrogen or other materials), the nature of the description at issue, or whether it has anything

to do with environmental issues or claims of environmental contamination. As an industrial facility that has been in use for many years, the Pratt & Whitney facility has had "piping" of various sorts, the use of which would necessarily involve "records" of various sorts. None of those materials is relevant to Plaintiffs' claims of environmental contamination.

The burden of responding to this discovery is illustrated, in part, with the attached declaration of David Walter, which was originally prepared and served in 2012 in response to discovery motion practice in the Featherston case. Mr. Walter explains, as Manager of Test Systems Engineering, the extraordinary burden that would be associated with searching for and producing documents in response to a request for documents related to the "construction, planning, repair and/or remediation" of test stands in just one area (Area E) of the Pratt & Whitney facility. As explained by Mr. Walter, test stands have been used at Pratt & Whitney since the 1950s and 1960s, they are regularly modified, rebuilt, added on to and the like, and there might be 10 jobs per year in a test area, some of which would involve "hundreds of drawings, hundreds of purchase orders, and thousands of supporting documents to contractors." Mr. Walter also explains that just searching for "drawings" "would require looking through over 90,000 drawings on file."

This document request is more expansive and intrusive than the request that Mr. Walter was addressing in his declaration. Searching for documents that are responsive to this request (documents that have no relevance to Plaintiffs' claims of environmental contamination) would impose an even greater and more unwarranted burden.

Pratt & Whitney has produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of

environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32). To the extent there are environmental issues, including any basis on which to claim environmental contamination due to the operation of "piping" at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for all "inventories and records" of "piping" imposes an undue burden.

17. All **Inventory Records, Purchase & Sale Records** of **Jet Fuel, Rocket Fuel, Solvents**, prepared for or concerning the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

38

Plaintiffs' claims of environmental contamination are not based on the volume of jet fuel, rocket fuel or solvents that was purchased, sold or used at Pratt & Whitney's facility; the claims depend, rather, on evidence that chemicals were released into the environment. Accordingly, this request for "inventory records" and "purchase and sale records" is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for *all* such records imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinary large amount of documentation that is at best tangentially related to any matter at issue in the case. Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

With regard to the subject matter of this request, Pratt & Whitney has searched for and produced reports of environmental investigations and remediation efforts that include studies, data, descriptions and records of discharges of fuel and solvents. Pratt & Whitney has in fact produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals,

39

and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32). To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "inventory records" and "purchase and sale records" for fuels and solvents imposes an undue burden.

18.  All **Inventory Records, Purchase & Sale Records** of **Gasoline, Diesel, and Kerosene**, prepared for or concerning the P&W facility in Palm Beach County, Florida including but not limited to those of the P&W gasoline station.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the volume of gasoline, diesel or kerosene that was purchased, sold or used at Pratt & Whitney's facility;

40

the claims depend, rather, on evidence that chemicals were released into the environment. Accordingly, this request for "inventory records" and "purchase and sale records" is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for *all* such records imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinary large amount of documentation that is at best tangentially related to any matter at issue in the case. Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

With regard to the subject matter of this request, Pratt & Whitney has searched for and produced reports of environmental investigations and remediation efforts that include studies, data, descriptions and records of discharges of fuel and solvents. Pratt & Whitney has in fact produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination,

and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for all "inventory records" and "purchase and sale records" for fuels imposes an undue burden.

19.     All **records** concerning **leaks or spills from the pumps or piping at the P&W gas station** of Gasoline, Diesel, and Kerosene at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. It is duplicative of prior requests, including Plaintiffs First Request for Production, Request 20. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Pratt & Whitney has searched for and produced reports of environmental investigations and remediation efforts that include studies, data, descriptions and records of

discharges of fuel and solvents. Pratt & Whitney has in fact produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for records of "leaks and spills" is duplicative and imposes an undue burden.

20.  All estimated and actual **Emission Inventories** and records of emissions for **Burn Pits** prepared for or concerning the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney states that it has not maintained or used a "burn pit" at its facility in

43

decades. To the extent they ever existed and were maintained, any documents concerning the design or operation of any burn pit would have been maintained in the archive of documents that was previously produced to Plaintiffs. Similarly, any documents relating to an "emission inventory" of burn pits would have been found in that archive, to the extent they ever existed and were maintained. With the exception of descriptions that might be contained in environmental reports previously produced to Plaintiffs, Pratt & Whitney is not aware of any documents responsive to this request.

21.     All estimated and actual **Emission Inventories** and records of emissions for **Jet Engine Firings, Testing, and Flushing** prepared for or concerning the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overbroad and unduly burdensome, as well as unduly repetitive of previous documents requests to which Pratt & Whitney has responded, to the extent it seeks records of air emissions from Pratt & Whitney operations at its facility. Pratt & Whitney previously produced records related to its Title V air permits, which are a matter of public record. These records were maintained, among other places, in the archive for Environmental Health & Services that was made available for inspection and copying.

Pratt & Whitney continues its collection and production of ESI. Pratt & Whitney will collect appropriate media from custodians likely to have documents that are potentially responsive to this request, run appropriate search terms, review the documents that contain those terms for responsiveness, and process responsive documents for production in accordance with the protocol that Pratt & Whitney previously disclosed to Plaintiffs and that the parties continue to discuss.

22.     All estimated and actual **Emission Inventories** and records of emissions for **Rocket Engine Firings, Testing, and Flushing** prepared for or concerning the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overbroad and unduly burdensome, as well as unduly repetitive of previous documents requests to which Pratt & Whitney has responded, to the extent it seeks records of air emissions from Pratt & Whitney operations at its facility. Pratt & Whitney previously produced records related to its Title V air permits, which are a matter of public record. These records were maintained, among other places, in the archive for Environmental Health & Services that was made available for inspection and copying.

Pratt & Whitney continues its collection and production of ESI. Pratt & Whitney will collect appropriate media from custodians likely to have documents that are potentially responsive to this request, run appropriate search terms, review the documents that contain those terms for responsiveness, and process responsive documents for production in accordance with the protocol that Pratt & Whitney previously disclosed to Plaintiffs and that the parties continue to discuss.

23.     All estimated and actual **Emission Inventories** and records of emissions for **Cooling Towers** prepared for or concerning the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is vague and ambiguous in its request for "emission inventories and records of emissions" for cooling towers, which to Pratt & Whitney's knowledge do not have "emissions."

Pratt & Whitney further objects that this request is overbroad and unduly

45

burdensome, as well as unduly repetitive of previous documents requests to which Pratt & Whitney has responded, to the extent it seeks records of air emissions from Pratt & Whitney's operations at its facility. Pratt & Whitney previously produced records related to its Title V air permits, which are a matter of public record. These records were maintained, among other places, in the archive for Environmental Health & Services that was made available for inspection and copying.

Pratt & Whitney continues its collection and production of ESI. Pratt & Whitney will collect appropriate media from custodians likely to have documents that are potentially responsive to this request, run appropriate search terms, review the documents that contain those terms for responsiveness, and process responsive documents for production in accordance with the protocol that Pratt & Whitney previously disclosed to Plaintiffs and that the parties continue to discuss.

24.     All estimated and actual **Emission Inventories** and records of emissions for **Air Strippers** prepared for or concerning the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overbroad and unduly burdensome, as well as unduly repetitive of previous documents requests to which Pratt & Whitney has responded, to the extent it seeks records of air emissions from Pratt & Whitney operations at its facility. Pratt & Whitney previously produced records related to its Title V air permits, which are a matter of public record. These records were maintained, among other places, in the archive for Environmental Health & Services that was made available for inspection and copying.

Pratt & Whitney continues its collection and production of ESI. Pratt & Whitney will

collect appropriate media from custodians likely to have documents that are potentially responsive to this request, run appropriate search terms, review the documents that contain those terms for responsiveness, and process responsive documents for production in accordance with the protocol that Pratt & Whitney previously disclosed to Plaintiffs and that the parties continue to discuss.

25. **All Records of test firing jet and rocket engines** at the P&W facility in Palm Beach County, Florida, including but not limited to the **test number, identification of test stand used, height above ground of engine** during test fire, **temperature** of engine exhaust during test fire, **width, length and velocity of flame** from engine, the **coordinates for the location of the test stand, date of test, start time, duration, engine model tested, volume and specific type of fuel used,** and **emission record for the test**.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the process for jet engine testing or rocket engine testing. Accordingly, this broad request for "all records" of testing jet engines and rocket engines is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for "all records of test firing jet engines and rocket engines" imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinarily large amount of documentation that is at best tangentially related to any matter at issue in the case. The burden of this discovery is disproportionate to the benefit, if

47

any, in terms of identifying relevant evidence. It would be extremely difficult to search for "all records" of jet engine firing at the facility, without regard to time, because jet engine testing has been one of the primary activities at the facility over the course of more than 50 years. This request for "all records" of jet engine testing is therefore extraordinarily broad. But it encompasses all manner of records that are obviously of no relevance to Plaintiffs' claims, such as (to name just a few items) records showing the design of jet engines and data reporting on the results of the testing.

The request is overly broad and unduly burdensome in its request for "all records" of testing, without regard to the nature of the record or whether it has anything to do with environmental issues or claims of environmental contamination. The request itself demonstrates its extraordinary overbreadth by including within its scope documents showing the "test number," "test stand used," "height above ground of engine," "temperature of engine exhaust," "width, length and velocity of flame from engine," "engine model tested," and the like. A substantial portion of the work done at the Pratt & Whitney facility for the past 50 years has involved jet engine testing, which would necessarily involve records of various sorts. These details have nothing to do with Plaintiffs' claims of environmental contamination, and the requested records are irrelevant to Plaintiffs' claims.

The burden of responding to this discovery is illustrated, in part, with the attached declaration of David Walter, which was originally prepared and served in 2012 in response to discovery motion practice in the Featherston case. Mr. Walter explains, as Manager of Test Systems Engineering, the extraordinary burden that would be associated with searching for and producing documents in response to a request for documents related to the "construction, planning, repair and/or remediation" of test stands in just one area (Area E) of the Pratt &

48

Whitney facility. As explained by Mr. Walter, test stands have been used at Pratt & Whitney since the 1950s and 1960s, they are regularly modified, rebuilt, added on to and the like, and there might be 10 jobs per year in a test area, some of which would involve "hundreds of drawings, hundreds of purchase orders, and thousands of supporting documents to contractors." Mr. Walter also explains that just searching for "drawings" "would require looking through over 90,000 drawings on file."

This document request is more expansive and intrusive than the request that Mr. Walter was addressing in his declaration. Searching for documents that are responsive to this request (documents that have no relevance to Plaintiffs' claims of environmental contamination) would impose an even greater and more unwarranted burden.

Pratt & Whitney has produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

Given the expansive time frame covered by Plaintiffs' requests (no time limit at all),

49

responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

To the extent there are environmental issues, including any basis on which to claim environmental contamination due to jet engine testing at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "all records" of engine testing imposes an undue burden.

Pratt & Whitney further objects that the documents covered by this request could include documents that contain or reveal confidential information of Pratt & Whitney or materials subject to the requirements of ITAR and EAR.

26.   All **Operating Schedules for jet and rocket test firings** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

This request is duplicative of Request 25, above, which sought "all records" of jet and rocket engine testing.

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant

information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the schedule for jet engine testing or rocket engine testing. Accordingly, this broad request for "all operating schedules" for firing jet engines and rocket engines is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for "all operating schedules" imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinarily large amount of documentation that is at best tangentially related to any matter at issue in the case. The burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

Pratt & Whitney has produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

51

Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

To the extent there are environmental issues, including any basis on which to claim environmental contamination due to jet engine testing at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "all operating schedules" for engine testing imposes an undue burden.

27.   All **Operating Schedules for metal plating and mirror plating** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the schedule for

metal plating and mirror plating. Accordingly, this broad request for "all operating schedules" for those activities is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for "all operating schedules" imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinarily large amount of documentation that is at best tangentially related to any matter at issue in the case. The burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

Pratt & Whitney has produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. But that

53

documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

To the extent there are environmental issues, including any basis on which to claim environmental contamination due to plating at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "all operating schedules" of plating imposes an undue burden.

28.   All **Operating Schedules for Cooling Towers** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

This request is duplicative of Request 25, above, which sought "all records" of jet and rocket engine testing, and Request 26, above, which sought "all operating schedules" for engine testing.

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the schedule for jet engine testing or rocket engine testing or the use of a cooling tower. Accordingly, this broad request for "all operating schedules" for cooling towers is not reasonably calculated to

lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for "all operating schedules" imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinarily large amount of documentation that is at best tangentially related to any matter at issue in the case. The burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

Pratt & Whitney has produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light

of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

To the extent there are environmental issues, including any basis on which to claim environmental contamination due to the use of cooling towers at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "all operating schedules" for cooling towers imposes an undue burden.

29.   All **inventories and records of chemicals** used or added to water used in **Cooling Towers** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs have sought and been provided information concerning the alleged contaminants of concern and their discharge into or presence in the environment in and around Pratt & Whitney's facility. Pratt & Whitney has searched for and produced reports of environmental investigations and remediation efforts that include studies, data, descriptions and records of discharges of all the contaminants of concern identified in Plaintiffs' complaint. Pratt & Whitney has in fact produced millions of pages of documents related to

the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s.

Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded,

Plaintiffs' request for "all inventories and records of chemicals" is duplicative and imposes an undue burden that is not proportional to the benefit, in terms of identifying relevant information not already available to the Plaintiffs, of conducting the additional search and production required by this request.

30.   All **Operating Schedules for Solvent Stills** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney states that it has not maintained or used a "solvent still" at the facility in decades. With the exception of descriptions that might be contained in environmental reports previously produced to Plaintiffs, Pratt & Whitney is not aware of any documents responsive to this request.

31.   All **inventories and records of chemicals** used at the **Solvent Still** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney states that it has not maintained or used a "solvent still" at the facility in decades. With the exception of descriptions that might be contained in environmental reports previously produced to Plaintiffs, Pratt & Whitney is not aware of any documents responsive to this request.

32.   All **inventories and purchase records of Solvents used** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

This request is duplicative of Request 17, above, which sought "inventory records, purchase and sale records of jet fuel, rocket fuel, solvents."

Pratt & Whitney objects that this request is overly broad and unduly burdensome.

Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the volume of solvents that was purchased, sold or used at Pratt & Whitney's facility; the claims depend, rather, on evidence that chemicals were released into the environment. Accordingly, this request for "inventory records" and "purchase and sale records" is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for *all* such records imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinary large amount of documentation that is at best tangentially related to any matter at issue in the case. Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

With regard to the subject matter of this request, Pratt & Whitney has searched for and produced reports of environmental investigations and remediation efforts that include studies, data, descriptions and records of discharges of fuel and solvents. Pratt & Whitney has in fact produced millions of pages of documents related to the investigation, reporting

and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "all inventories and purchase records of solvents" is duplicative and imposes an undue burden that is not proportional to the benefit, in terms of identifying relevant information not already available to the Plaintiffs, of conducting the additional search and production required by this request.

33.     All **inventories and purchase records of Jet and Rocket Fuel used** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

This request is duplicative of Request 17, above, which sought "inventory records,

60

purchase and sale records of jet fuel, rocket fuel, solvents."

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the volume of jet fuel or rocket fuel that was purchased, sold or used at Pratt & Whitney's facility; the claims depend, rather, on evidence that chemicals were released into the environment. Accordingly, this request for "inventory records" and "purchase and sale records" is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for *all* such records imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinary large amount of documentation that is at best tangentially related to any matter at issue in the case. Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

With regard to the subject matter of this request, Pratt & Whitney has searched for and produced reports of environmental investigations and remediation efforts that include

studies, data, descriptions and records of discharges of fuel and solvents. Pratt & Whitney has in fact produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "all inventories and purchase records" of fuels is duplicative and imposes an undue burden that is not proportional to the benefit, in terms of identifying relevant information not already available to the Plaintiffs, of conducting the additional search and production required by this request.

34.     All **inventories and records of chemicals** used for **Metal Plating** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs have sought and been provided information concerning the alleged contaminants of concern and their discharge into or presence in the environment in and around Pratt & Whitney's facility. Pratt & Whitney has searched for and produced reports of environmental investigations and remediation efforts that include studies, data, descriptions and records of discharges of all the contaminants of concern identified in Plaintiffs' complaint. Pratt & Whitney has in fact produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s.

Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "all inventories and records of chemicals" is duplicative and imposes an undue burden that is not proportional to the benefit, in terms of identifying relevant information not already available to the Plaintiffs, of conducting the additional search and production required by this request.

35.    All **inventories and records of chemicals** used for **Mirror Plating** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding

to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs have sought and been provided information concerning the alleged contaminants of concern and their discharge into or presence in the environment in and around Pratt & Whitney's facility. Pratt & Whitney has searched for and produced reports of environmental investigations and remediation efforts that include studies, data, descriptions and records of discharges of all the contaminants of concern identified in Plaintiffs' complaint. Pratt & Whitney has in fact produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s.

Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light

of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "all inventories and records of chemicals" is duplicative and imposes an undue burden that is not proportional to the benefit, in terms of identifying relevant information not already available to the Plaintiffs, of conducting the additional search and production required by this request.

36.     All **inventories and records of Hexavalent Chromium used** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs have sought and been provided information concerning the alleged contaminants of concern and their discharge into or presence in the environment in and around Pratt & Whitney's facility. Pratt & Whitney has searched for and produced reports of environmental investigations and remediation efforts that include studies, data, descriptions

66

and records of discharges of all the contaminants of concern identified in Plaintiffs' complaint. Pratt & Whitney has in fact produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s.

Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced

would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "all inventories and records of" particular chemicals is duplicative and imposes an undue burden that is not proportional to the benefit, in terms of identifying relevant information not already available to the Plaintiffs, of conducting the additional search and production required by this request.

37.   All **inventories and records of Chloroform, Bromodichloromethane, and Methylene Chloride** used at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs have sought and been provided information concerning the alleged contaminants of concern and their discharge into or presence in the environment in and around Pratt & Whitney's facility. Pratt & Whitney has searched for and produced reports of environmental investigations and remediation efforts that include studies, data, descriptions and records of discharges of all the contaminants of concern identified in Plaintiffs' complaint. Pratt & Whitney has in fact produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s.

Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "all inventories and records of" particular chemicals is duplicative and imposes an undue burden that is not proportional to the benefit, in terms of identifying relevant information not already available to the Plaintiffs, of conducting the additional

search and production required by this request.

38. All **inventories and records of PCBs** used at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs have sought and been provided information concerning the alleged contaminants of concern and their discharge into or presence in the environment in and around Pratt & Whitney's facility. Pratt & Whitney has searched for and produced reports of environmental investigations and remediation efforts that include studies, data, descriptions and records of discharges of all the contaminants of concern identified in Plaintiffs' complaint. Pratt & Whitney has in fact produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s.

Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and

surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

To the extent there are environmental issues, including any basis on which to claim environmental contamination due to operations at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "all inventories and records of" particular chemicals is duplicative and imposes an undue burden that is not proportional to the benefit, in terms of identifying relevant information not already available to the Plaintiffs, of conducting the additional search and production required by this request.

39.   All **inventories and records of Heat Exchangers** used at the P&W facility in Palm Beach County, Florida, including but not limited to spills and leaks of PCBs from them.

**RESPONSE:**

Pratt & Whitney objects that this request is vague and ambiguous in its request

71

regarding "Heat Exchangers," which is not a defined term. Pratt & Whitney further objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs have sought and been provided information concerning the alleged contaminants of concern and their discharge into or presence in the environment in and around Pratt & Whitney's facility. Pratt & Whitney has searched for and produced reports of environmental investigations and remediation efforts that include studies, data, descriptions and records of discharges of all the contaminants of concern identified in Plaintiffs' complaint. Pratt & Whitney has in fact produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s.

Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

Given the expansive time frame covered by Plaintiffs' requests (no time limit at all), responding to this request would entail a search for archived documents (if they exist) and requests from multiple employees. Plaintiffs have previously insisted on an intrusive search for responsive documents in ESI, which also entails substantial time and expense. But that documentation has no relevance to Plaintiffs' claims or Pratt & Whitney's defenses. In light of the time and expense required to respond to this expansive request, the burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

To the extent there are environmental issues, including any basis on which to claim environmental contamination due to the use of "Heat Exchangers" at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "all inventories and records of" the use of "Heat Exchangers" is duplicative and imposes an undue burden that is not proportional to the benefit, in terms of identifying relevant information not already available to the Plaintiffs, of conducting the additional search and production required by this request.

40.     All **Operating Schedules for burning at the burn pits** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney states that it has not maintained or used a "burn pit" at its facility in decades. To the extent they ever existed and were maintained, any documents concerning the design or operation of any burn pit would have been maintained in the archive of documents that was previously produced to Plaintiffs. Similarly, any documents relating to an

"operating schedule" for any burn pits would have been found in that archive, to the extent they ever existed and were maintained. With the exception of descriptions that might be contained in environmental reports previously produced to Plaintiffs, Pratt & Whitney is not aware of any documents responsive to this request.

41.   All **Operating Schedules for running Heat Exchangers** at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is vague and ambiguous in its request regarding "Heat Exchangers," which is not a defined term.

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Plaintiffs' claims of environmental contamination are not based on the operating schedule for running "Heat Exchangers." Accordingly, this broad request for "all operating schedules" for Heat Exchangers is not reasonably calculated to lead to the discovery of evidence that is relevant to Plaintiffs' claims or Pratt & Whitney's defenses. Further, the request for "all operating schedules" imposes an undue burden on Pratt & Whitney to search broadly and produce what is likely to be an extraordinarily large amount of documentation that is at best tangentially related to any matter at issue in the case. The burden of this discovery is disproportionate to the benefit, if any, in terms of identifying relevant evidence.

Pratt & Whitney has produced millions of pages of documents related to the

investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32). To the extent there are environmental issues, including any basis on which to claim environmental contamination due to the use of "Heat Exchangers" at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for "all operating schedules" of "Heat Exchangers" imposes an undue burden.

42.   All **inventories and records of storing and burning contaminated jet or rocket fuel** including type and volume of fuel; name, concentration, and volume of contaminant; date, time, location and manner and volume of disposition or disposal for the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney states that it has not maintained or used a "burn pit" at its facility in decades. With the exception of descriptions that might be contained in environmental reports

previously produced to Plaintiffs, Pratt & Whitney is not aware of any documents responsive to this request.

43.     All **inventories and lists of pollution sources** at the P&W facility in Palm Beach County, Florida including those that are permitted and those which are not.

**RESPONSE:**

Pratt & Whitney objects that this request is overbroad and unduly burdensome, as well as unduly repetitive of previous documents requests to which Pratt & Whitney has responded, to the extent it seeks records of environmental investigations and remediation efforts at Pratt & Whitney.

Pratt & Whitney has produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes historical records in hard copy and a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

Pratt & Whitney will nevertheless search for responsive documents as part of its ongoing collection and production of ESI. Pratt & Whitney will collect appropriate media

from custodians likely to have documents that are potentially responsive to this request, run

appropriate search terms, review the documents that contain those terms for responsiveness,

and process responsive documents for production in accordance with the protocol that Pratt

& Whitney previously disclosed to Plaintiffs and that the parties continue to discuss.

44.   All **Reports** and attachment thereto prepared by **Golder Associates Inc.,** 1801
      Clint Moore Rd, Boca Raton, Florida, that concern or discuss Emissions or
      Estimates of Emissions at the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overbroad and unduly burdensome, as

well as unduly repetitive of previous documents requests to which Pratt & Whitney has

responded, to the extent it seeks records of air emissions from Pratt & Whitney operations at

its facility. Pratt & Whitney previously produced records related to its Title V air permits,

which are a matter of public record. These records were maintained, among other places, in

the archive for Environmental Health & Services that was made available for inspection and

copying.

Plaintiffs have not demonstrated that "reports" from Golder Associates have any

independent relevance or are likely to contain relevant information beyond the scope of the

extensive documentation that Pratt & Whitney has already produced concerning emissions.

Pratt & Whitney will nevertheless search for responsive documents as part of its

ongoing collection and production of ESI. Pratt & Whitney will collect appropriate media

from custodians likely to have documents that are potentially responsive to this request, run

appropriate search terms, review the documents that contain those terms for responsiveness,

and process responsive documents for production in accordance with the protocol that Pratt

& Whitney previously disclosed to Plaintiffs and that the parties continue to discuss.

45.     All correspondence, memoranda, notes, writings, internal memos concerning or discussing **Golder Associates Inc.,** 1801 Clint Moore Rd, Boca Raton, Florida, and its work for the P&W facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overbroad and unduly burdensome, as well as unduly repetitive of previous documents requests to which Pratt & Whitney has responded, to the extent it seeks records of air emissions from Pratt & Whitney operations at its facility. Pratt & Whitney previously produced records related to its Title V air permits, which are a matter of public record. These records were maintained, among other places, in the archive for Environmental Health & Services that was made available for inspection and copying.

Plaintiffs have not demonstrated that the internal documentation concerning "notes" or "memos" discussing Golder Associates has any independent relevance or is likely to contain relevant information beyond the scope of the extensive documentation that Pratt & Whitney has already produced concerning emissions.

Pratt & Whitney will nevertheless search for responsive documents as part of its ongoing collection and production of ESI. Pratt & Whitney will collect appropriate media from custodians likely to have documents that are potentially responsive to this request, run appropriate search terms, review the documents that contain those terms for responsiveness, and process responsive documents for production in accordance with the protocol that Pratt & Whitney previously disclosed to Plaintiffs and that the parties continue to discuss.

46.     All **inventories and records** of storing, using, spilling, or escape of **chlorine and other chemicals used by P&W for its water treatment plant** facility in Palm Beach County, Florida, including but not limited to type and volume of spill; name, concentration, and volume of chlorine or chemical; date, time, location and manner and volume of spill or escape.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. It is duplicative of prior requests. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Pratt & Whitney has searched for and produced reports of environmental investigations and remediation efforts that include studies, data, descriptions and records of discharges of contaminants of concern listed in Plaintiffs' complaint. Pratt & Whitney has in fact produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

To the extent there are environmental issues, including any basis on which to claim environmental contamination due to the operation of the water treatment plant at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that

Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for records of "storing, using, spilling or escape" is duplicative and imposes an undue burden.

47.    All **Lab records for samples of untreated and treated water** taken at the P&W Water Treatment Plant at its facility in Palm Beach County, Florida.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. It is duplicative of prior requests. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding to this request outweighs the likely benefit (if any) of the discovery.

Pratt & Whitney has searched for and produced reports of environmental investigations and remediation efforts that include studies, data, descriptions and records of discharges of contaminants of concern listed in Plaintiffs' complaint. Pratt & Whitney has in fact produced millions of pages of documents related to the investigation, reporting and remediation of environmental conditions. This production includes a database with hundreds of thousands of entries that documents the results of environmental testing at the facility since the 1980s. Pratt & Whitney produced these documents in response to document requests that included requests for "[a]ll studies, reports, records, tests, lab results, proposals, and recommendations concerning surface or groundwater contamination, soil contamination, and spills," (Plaintiffs' First Request for Production, Request No. 20), "all occurrence and incident reports concerning spills, water quality, soil quality, groundwater contamination and

surface water contamination" (Plaintiffs' First Request for Production, Request No. 31) and "all files concerning water quality, soil quality, groundwater contamination and surface water contamination." (Plaintiffs' First Request for Production, Request No. 32).

To the extent there are environmental issues, including any basis on which to claim environmental contamination due to the operation of the water treatment plant at Pratt & Whitney, the millions of pages of documents Plaintiffs have previously requested and that Pratt & Whitney has produced would be the appropriate repository of documents to consider. Particularly in view of the extremely broad discovery requests to which Pratt & Whitney has previously responded, Plaintiffs' request for records of "samples of untreated and treated water taken" at the water treatment plant is duplicative and imposes an undue burden.

Pratt & Whitney further notes that records of sampling *treated* water have no relevance to Plaintiffs' claim of environmental contamination, which in no way depends on the quality of water made available after treatment at Pratt & Whitney's now closed water treatment facility. To the extent the request concerns samples of untreated water, Pratt & Whitney has produced a database with extensive data showing the results of groundwater sampling and testing.

48.     All **Lab records for samples of water** taken at the P&W facility that is piped in from a municipal water source.

**RESPONSE:**

Pratt & Whitney objects that this request is overly broad and unduly burdensome. Pursuant to Fed. R. Civ. P. 26(b)(2), the discovery sought by this request is unreasonably cumulative or duplicative, Plaintiffs have had ample opportunity to obtain relevant information through other discovery in this action, and the burden and expense of responding

to this request outweighs the likely benefit (if any) of the discovery.

The request seeks information that is not relevant to Plaintiffs' claims of environmental contamination, which are not based on Pratt & Whitney's sampling or testing the quality of municipal water. To the extent that the quality of any municipal water supply is relevant or at issue, Pratt & Whitney is not the source that should be consulted. The quality of municipal water is best determined through public records, maintained by the municipal water supplier, showing the results of sampling and testing performed by the supplier.

Notwithstanding its objection, Pratt & Whitney has obtained and will produce the publicly available "Annual Water Quality Report" for the City of West Palm Beach and Palm Beach County for recent years.

Respectfully submitted,

GUNSTER, YOAKLEY & STEWART, P.A.
777 South Flagler Drive, Suite 500 East
West Palm Beach, FL 33401
Telephone: 561-655-1980
Facsimile: 561-655-5677
***Attorneys for Defendant United Technologies Corporation
(Pratt & Whitney)***

By: s/Gregor J. Schwinghammer, Jr.
GREGOR J. SCHWINGHAMMER, JR.
Florida Bar No. 090158
gschwinghammer@gunster.com
G. JOSEPH CURLEY
Florida Bar No. 571873
jcurley@gunster.com
FABIENNE E. FAHNESTOCK
Florida Bar No. 00145483
ffahnestock@gunster.com


BARTLIT BECK HERMAN PALENCHAR & SCOTT, LLP
54W Hubbard Street, Suite 300
Chicago, IL 60654
Phone: (312)-494-4448
Fax:(312)-494-4440
***Attorneys for Defendant United Technologies Corporation
(Pratt & Whitney)***
SEAN W. GALLAGHER
*Pro Hac Vice*
sean.gallagher@bartlit-beck.com
ANDREW C. MACNALLY
*Pro Hac Vice*
andrew.macnally@bartlit-beck.com
DANIEL R. MCELROY
*Pro Hac Vice*
daniel.mcelroy@bartlit-beck.com


## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served by U.S. mail

on this <u>9th</u> day of November, 2015, on all counsel or parties of record on the Service List below.

/s/ Gregor J. Schwinghammer, Jr.

GREGOR J. SCHWINGHAMMER, JR.

## SERVICE LIST

CRAIG R. ZOBEL, ESQ.
Florida Bar No. 56080
czobel@zobellawfirm.com
Law Offices of Craig R. Zobel, P. A.
P.O. Box 32065
Palm Beach Gardens, FL  33420-2065
Telephone: (561) 277-1819
Facsimile: (561) 855-4282
*Attorneys for Plaintiffs*

SCOTT P. SCHLESINGER, ESQ.
Florida Bar No. 444952
scott@schlesingerlaw.com
JEFFREY L. HABERMAN, ESQ.
Florida Bar No. 98522
JHaberman@schlesingerlaw.com
SCHLESINGER LAW OFFICES, P.A.
1212 S.E. 3rd Avenue
Fort Lauderdale, FL  33316
Telephone: (954) 467-8800
Facsimile: (954) 523-4803
*Attorneys for Plaintiffs*

IN THE CIRCUIT COURT OF THE
FIFTEENTH JUDICIAL CIRCUIT, IN
AND FOR PALM BEACH COUNTY,
FLORIDA

CASE NO.: 2011CA013759XXXXMB (AJ)

JOYCE FEATHERSTON, as Personal
Representative of the Estate of
JOSEPH MICHAEL BARATTA, decedent,

    Plaintiff,

v.

UNITED TECHNOLOGIES
CORPORATION, Pratt & Whitney Group,
a Connecticut Corporation, and PALM
BEACH AGGREGATES, LLC, a Florida
Corporation,

    Defendants.

_____/

## AFFIDAVIT OF DAVID M. WALTER

STATE OF FLORIDA       )
                          )
COUNTY OF PALM BEACH   )

    BEFORE ME the undersigned authority personally appeared David M. Walters who

being duly sworn, deposes, and says:

    1.    My name is David M. Walter. I am the Manager of the Test Systems Engineering

department of United Technologies Corporation, Pratt & Whitney Group, ("Pratt & Whitney"). I

am over the age of 18 years and make this affidavit upon my personal knowledge of the facts

related herein or upon my personal knowledge of the records of Pratt & Whitney.

EXHIBIT 2

Walter
5 | 28 | 13   Sb

EXHIBIT _E_

EXHIBIT A TO PLAINTIFF'S NOTICE OF DEPOSITION OF DECLARANT

2.      I have reviewed Plaintiff Joyce Featherston's, as Personal Representative of the Estate of Joseph M. Baratta ("Plaintiff"), Request to Produce filed on September 11, 2012 requesting "[a]ny correspondence, contracts, or other documents from, to, or regarding any contractor who worked on the construction, planning, repair and/or remediation of test stands in AREA E." *See* Paragraph 2 of Plaintiff's Request to Produce filed on September 11, 2012.

3.      Area E was originally constructed in the late 1950's or early 1960's. Since then, Area E has been modified, re-constructed, re-built, added on to, parts demolished, overhauled, etc. Area E is "worked on" often when different engines are tested on it.

4.      Using conservative estimates, if Pratt & Whitney had a contractor labor on 10 jobs per year for the last 60 years, there would be 600 jobs related to Area E. Some jobs involved hundreds of drawings, hundreds of purchase orders, and thousands of supporting documents to contractors.

5.      Plaintiff's request to produce "[a]ny correspondence . . . regarding any contractor who worked on the construction . . . of test stands in AREA E" is an insurmountable request. Specifically, if I were to only look through the drawings that Pratt & Whitney would have provided to a contractor, it would require looking through over 90,000 drawings on file.


FURTHER AFFIANT SAYETH NOT.


David M. Walter
Manager, Test Systems Engineering, Pratt & Whitney


Page 2
GUNSTER, YOAKLEY & STEWART, P.A.
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW


**EXHIBIT A TO PLAINTIFF'S NOTICE OF DEPOSITION OF DECLARANT**

S617964619         margexec                                    05:52:59 p.m.    11-13-2012        3 /3

The foregoing instrument was subscribed and sworn to before me this _13th_ day of
November, 2012, by David M. Walter, Manager, Test Systems Engineering, Pratt & Whitney,
who is personally known to me or who provided _____
as identification.

_Paula M Coffey_
NOTARY PULIC

Print name: _Paula M Coffey_

Commission No.: _EE 066820_

My Commission Expires: _4/9/15_

WPB_ACTIVE 5326169.1

PAULA M COFFEY
MY COMMISSION # EE066820
EXPIRES April 09, 2015
(407) 398-0153   FloridaNotaryService.com

GUNSTER, YOAKLEY & STEWART, P.A.
PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

# EXHIBIT A TO PLAINTIFF'S NOTICE OF DEPOSITION OF DECLARANT